UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME LEWIS,

       Petitioner,

                           CASE NO. 2:08-CV-10485

v.                          JUDGE DENISE PAGE HOOD

                           MAGISTRATE JUDGE PAUL J. KOMIVES

MITCH PERRY,

       Respondent.[1]
_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    E.   *Sufficiency of the Evidence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    F.   *Sentencing (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         1.   *Guidelines Scoring* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         2.   *Judicial Fact Finding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    G.   *Jury Instructions (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    H.   *Venue/Jurisdiction (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    I.    *Ineffective Assistance of Counsel (Claims IV and VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
         2.   *Trial Counsel (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
         3.   *Appellate Counsel (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    J.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
         1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    K.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

---

    [1]By Order entered this date, Mitch Perry has been substituted in place of Hugh Wolfenbarger as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Jerome Lewis is a state prisoner, currently confined at the Newberry Correctional Facility in Newberry, Michigan.

2.      On November 6, 2003, petitioner was convicted of three counts of armed robbery, MICH. COMP. LAWS § 750.529; three counts of kidnapping, MICH. COMP. LAWS § 750.349; one count of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84; two counts of assault with a dangerous weapon, MICH. COMP. LAWS § 750.82; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a joint jury trial with his codefendant Earl Anthony Johnson in the Wayne County Circuit Court. On November 20, 2003, he was sentenced to concurrent terms of 135 months' to 30 years' imprisonment each on two of the armed robbery convictions and two of the kidnapping convictions, 185 months' to 30 years' imprisonment on the third armed robbery and third kidnapping convictions, 3-10 years' imprisonment on the assault with intent to commit great bodily harm convictions, and 2-4 years' imprisonment on each of the felonious assault convictions. Petitioner was also sentenced to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED PRIOR CONSISTENT STATEMENTS UNDER MRE 801(d)(1)(B)

THEREBY DENYING THE APPELLANT A FAIR AND IMPARTIAL TRIAL.

II.      THERE WAS INSUFFICIENT EVIDENCE UPON WHICH TO CONVICT APPELLANT OF KIDNAPPING WITH INTENT TO EXTORT MONEY.

III.     OFFENSE VARIABLES TEN (OV-10) AND TWELVE (OV-12) OF THE SENTENCE INFORMATION REPORT WERE INCORRECTLY SCORED REQUIRING THAT THE APPELLANT BE RE-SENTENCED.

IV.     THE TRIAL COURT INCORRECTLY INSTRUCTED THE JURY UPON THE REQUIRED INTENT ELEMENT OF AIDING AND ABETTING.

Petitioner also filed a *pro se* supplemental brief asserting that he was denied effective assistance of trial counsel, as well as a related motion to remand for an evidentiary hearing.  After denying petitioner's motion for remand, the court of appeals affirmed petitioner's convictions and sentences, finding no merit to his claims.  *See People v. Lewis*, No. 252508, 2005 WL 711762 (Mich. Ct. App. Mar. 29, 2005) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these five issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Lewis*, 474 Mich. 972, 707 N.W.2d 200 (2005).

5.      On April 6, 2006, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.      DEFENDANT IS ENTITLED TO A NEW TRIAL AS PROVIDED UNDER MCR 6.508(D)(3)(a)(b) SINCE HE HAS DEMONSTRATED BOTH PROVISIONAL GATE-KEEPING PREREQUISITES OF "GOOD CAUSE" FOR FAILING TO RAISE THE BELOW-MENTIONED APPLICATION OF ERRORS ON PRIOR DIRECT APPEAL, AND "ACTUAL PREJUDICE" RESULTING FROM THE IRREGULARITIES SUPPORTIVE OF HIS CLAIMS FOR RELIEF IN ABROGATION OF SUCH. US CONST AM VI, IX; MICH CONST 1963, ART 1, SEC 17, 20.

II.     DEFENDANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS WERE VIOLATED WHERE THE TRIAL COURT DID

3

NOT HAVE JURISDICTION.

III.   THE PROSECUTOR FAILED TO PROVE HIS THEORY UNDER MCL 762.9.

IV.   THE TRIAL COURT INCORRECTLY SCORED DEFENDANT'S SENTENCING GUIDELINES AS TO OV 10.

V.   DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

VI.   THE CUMULATIVE EFFECT OF THE ERRORS COMMITTED DURING DEFENDANT'S TRIAL VIOLATED HIS FUNDAMENTAL RIGHT TO A FAIR TRIAL.

On April 28, 2006, the trial court denied petitioner's motion for relief from judgment, concluding that: (1) the claims were without merit; (2) the claims previously raised on appeal were barred by MICH. CT. R. 6.508(D)(2); and (3) petitioner failed to establish good cause for his failure to raise the remaining claims on direct appeal, as required by MICH. CT. R. 6.508(D)(3).  *See People v. Lewis*, No. 03004266-02, at 3 (Wayne County, Mich., Cir. Ct. Apr. 28, 2006).  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Lewis*, 480 Mich. 920, 740 N.W.2d 254 (2007); *People v. Lewis*, No. 272595 (Mich. Ct. App. Apr. 20, 2007).

6.   Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on February 1, 2008.  As grounds for the writ of habeas corpus, he raises six claims:

I.   Petitioner was denied due process of law where the evidence was insufficient to sustain a conviction of kidnapping with the intent to extort money.

II.   Petitioner was denied due process of law as a result of the state trial courts' scoring of the sentencing guidelines where the evidence on the record did not support a scoring of 15 points for predatory conduct, and a scoring of 25 points for contemporaneous felonious criminal acts.  These facts were found

4

by a judge using the preponderance of the evidence standard, not by a jury beyond a reasonable doubt.

III.     Petitioner was denied due process of law and a fair trial where the state trial court incorrectly instructed the jury on the required intent element of aiding and abetting.

IV.     Petitioner was denied the effective assistance of counsel at trial for failing to challenge or object to aiding and abetting instruction.

V.     Petitioner was denied his right to a public trial by an impartial jury of the county wherein the alleged crime was committed, to due process and equal protection of the laws guaranteed by both federal and state constitutions. Petitioner's trial was held in a county that lacked authority to take such action and was thereby in want of jurisdiction. The state deprived Petitioner of the benefit of the state constitution and state created laws and in so doing deprived him of a protected liberty interest under the federal constitution.

VI.     Petitioner was denied his right to the effective assistance of appellate counsel on his appeal of right. In this regard, Petitioner contends that "cause" is established by his appellate counsel's ineffectiveness for failing to raise the venue and jurisdiction claims mentioned above[.]

7.     Respondent filed his answer on August 14, 2008. He contends that petitioner's fourth, fifth, and sixth claims are barred by petitioner's procedural default in the state courts, and that all of the claims are without merit or not cognizable on habeas review.

8.     Petitioner filed a reply to respondent's answer on September 19, 2008.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the March 17, 2003, assaults of three victims. Petitioner was tried jointly with his codefendant, Earl Anthony Johnson.[2] The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

During the afternoon of March 17, 2003, Jeffrey Norman received a phone

---

[2]Johnson's habeas petition was previously denied by Judge Edmunds. *See Johnson v. Davis*, No. 06-15760, 2009 WL 1847379 (E.D. Mich. June 19, 2009) (Edmunds, J., adopting report and recommendation of Komives, M.J.).

5

call from defendant Lewis, an acquaintance, asking for marijuana. Norman and defendant Lewis had a history of calling one another if they needed marijuana and had occasionally gotten together socially. On the afternoon in question, Norman and his girlfriend, Melissa Kessler, did not have any marijuana but were already planning to meet Brandon McTurner who they believed would supply them with marijuana. Norman told defendant Lewis that he could come along and agreed to pick him up on their way to acquire the marijuana. Kessler drove Norman in her vehicle to meet defendant Lewis at the Key Manor Apartments in Romulus. On arriving at the apartments, defendant Lewis got into the back seat of the car and asked if his cousin, defendant Johnson, could come as well. Norman and Kessler agreed, and defendant Johnson also entered the vehicle.

As Kessler began pulling out of the complex parking lot, each defendant brandished a gun, pointed it at Norman's neck, and told him to empty his pockets. Initially, Norman thought they were joking and asked if it was some sort of game. Defendants responded that they were serious and they would kill him if he did not comply. Norman turned over his cell phone and his cash. Defendants then demanded Kessler's cash, which she immediately turned over to defendants. Defendants were not pleased with their cache, accused them of hiding something, and then told Norman to call "his boy" McTurner. With the guns still at his neck Norman feared for his life and called McTurner to set up a meeting to purchase marijuana. McTurner agreed to bring four ounces of marijuana and planned to meet at Scores Lanes in Taylor, which was the location selected by defendants. Defendants then ordered Norman to call McTurner again and ask him how much marijuana he had available. McTurner said he had about eight ounces and agreed to bring it.

En route to the bowling alley, Kessler stopped at a gas station because they were running low on fuel. Defendant Lewis went in and paid and Kessler pumped the gas into her car. They returned to the road and reached Scores Lanes. Kessler parked in the middle of the parking lot. Defendants told Norman to get out of the car and told Kessler that if she left, called the police, or made a scene, they would kill Norman. Defendants tucked their guns into their pants and walked with Norman into the bowling alley.

McTurner arrived and parked next to Kessler's car after defendants and Norman were inside the bowling alley. McTurner asked where Norman was through his window and Kessler said he was inside the bowling alley. Defendants went outside planning to take McTurner's drugs and money. However, they just walked up to him and asked him for a cigarette which he provided. Defendants then reentered the bowling alley and told Norman to call McTurner and tell him to get into Kessler's car. Norman complied and called McTurner directing him to wait for him in Kessler's car because he was using the restroom. McTurner got out of his car and got into Kessler's car.

Defendants then jumped into the backseat of the car, pulled out their guns, pointed them at McTurner and told him to empty his pockets. McTurner relinquished two cell phones. Defendants then asked where his car was and for the keys. McTurner gestured toward his car and handed over his keys. McTurner tried to get

out of the car, but the passenger door was broken and could not be opened normally from the inside. McTurner tried to fight with the door but could not open it and defendants told him to cooperate or they would kill him. Defendant Johnson exited Kessler's car, got into McTurner's vehicle, and began to drive to the area behind the bowling alley. Still in Kessler's car, defendant Lewis kept the gun pointed at McTurner's neck and told Kessler to follow defendant Johnson. Kessler followed defendant Johnson behind the bowling alley and parked.

When they parked McTurner tried again to get out of the car. Defendant Lewis had the gun pointed directly at the back of his lower neck and pulled the trigger three times, but the gun did not fire. McTurner eventually got the window of the passenger door down and was able to open the door from the outside and get out the vehicle. Defendant Lewis grabbed a hold of McTurner, and McTurner's shirt ripped as he eventually freed himself and ran away. Defendant Lewis got out the car and yelled that McTurner got away to defendant Johnson who was searching the trunk o[f] McTurner's car. Defendant Lewis then got into the front seat of Kessler's car and defendant Johnson got into the back seat. Meanwhile, McTurner ran into the bowling alley and asked the manager to call 911.

Defendants told Kessler to drive so she did. With the guns on their laps, defendants gave her directions where to go and what speed to travel, telling her they would kill her and her daughter if she did not comply. Kessler was hysterical and they told her to stop crying. About five or six police cars passed them on the road going the opposite direction toward the bowling alley. Defendants told her to pull into the parking lot of a CVS and she did. Defendant Lewis grabbed at rings Kessler was wearing, but they were tight and would not come off. Warning her not say anything, they got out of the car. Kessler drove away in the direction of the bowling alley to find the police. When Kessler reached the bowling alley she talked to the police and told them where she had dropped off defendants and some officers headed in that direction. While Kessler spoke to the police, Norman walked out of the bowling alley, saw Kessler crying, and walked over to her and also talked to the police.

Defendants entered CVS and asked to call a taxi. Tricia Morton, and another CVS employee, Kevin Manetta, thought defendants were acting suspicious and Morton called the police. The police arrived and apprehended both defendants. Police recovered two guns, two cell phones, a pager, money, and suspected marijuana.

*Lewis*, 2005 WL 711762, at *1-2, slip op. at 2-3

C.    *Procedural Default*

Respondent first contends that petitioner's third claim, asserting an error in the jury

instructions, is procedurally defaulted because petitioner failed to object to the instructions at trial.

7

Respondent also argues that petitioner's fourth claim, alleging ineffective assistance of trial counsel for failing to object to the jury instructions, is barred because petitioner did not raise the claim in the state courts and would now be barred from doing so pursuant to MICH. CT. R. 6.502(G).  Finally, respondent contends that petitioner's fifth and sixth claims are barred by petitioner's procedural default in failing to raise these claims on direct appeal.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits.  Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts.  Petitioner contends that his trial counsel was constitutionally ineffective for failing to object

to the jury instructions at trial, and that his appellate counsel was ineffective for failing to raise his

defaulted claims on direct appeal.  If petitioner's position is correct, counsel's ineffectiveness may

constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451

(2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate that appellate counsel was

ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal.  *See*

*Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th

Cir. 1996).  Given that the cause and prejudice inquiry merges with an analysis of the merits of the

petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they

are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v.*

*Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999)

(considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and

prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination

9

of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."
*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A
state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts
the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are
materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a
result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)
(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535
U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court
to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]
Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,
539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.
However, "[i]n order for a federal court to find a state court's application of [Supreme Court]
precedent 'unreasonable,' the state court's decision must have been more than incorrect or
erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539
U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of
whether the state court's decision comports with "clearly established federal law as determined by
the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the
Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the
holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

10

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Sufficiency of the Evidence (Claim I)*

Petitioner first contends that the prosecutor failed to present sufficient evidence to establish his guilt on the kidnapping charges.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA

11

standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.   *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).   In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence.   *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).   However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.   Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).   Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).   Michigan law provides:

> (1) [a] person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do 1 or more of the following:
> (a) Hold that person for ransom or reward.
> (b) Use that person as a shield or hostage.

12

(c) Engage in criminal sexual penetration or criminal sexual contact with that person.

(d) Take that person outside of the state.
(e) Hold that person in involuntary servitude.

(2) As used in this section, "restrain" means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

MICH. COMP. LAWS § 750.349.  The Michigan Supreme Court has consistently held that kidnapping requires that the prosecutor prove four elements beyond a reasonable doubt: (1) forcible confinement of the victim within the state; (2) done willfully, maliciously, and without lawful authority; (3) against the will of the person confined or imprisoned; and (4) an asportation of the victim which is not merely incidental to an underlying crime, unless the underlying crime involves murder, extortion, or taking a hostage.  *See People v. Wesley*, 421 Mich. 375, 388, 365 N.W.2d 692 (1984).

As the Michigan Supreme Court has explained, "Michigan's kidnapping statute encompasses six forms of conduct, each of which constitutes the crime of kidnapping."  *People v. Jaffray*, 445 Mich. 287, 296-97, 519 N.W.2d 108, 113 (1994).  Specifically,

"[A] person can be convicted of kidnapping if it is proven beyond a reasonable doubt that he or she wilfully, maliciously, and without lawful authority,
(a) forcibly or secretly confined or imprisoned any other person within this state against his will, or
(b) forcibly carried or sent such person out of this state, or
(c) forcibly seized or confined, or inveigled or kidnapped any other person
(1) with intent to extort money or other valuable thing thereby, or
(2) with intent either
(A) to cause such person to be secretly confined or imprisoned in this state against his will, or
(B) [to cause such person to be] in any way held to service against his will."

13

*Id.* at 297, 519 N.W.2d at 113 (quoting *Wesley*, 421 Mich. at 383, 365 N.W.2d at 694) (alternations in original) (footnote omitted).  Importantly, the Michigan Supreme Court has "concluded that 'the "intent section" of the statute applies only to the form of conduct which immediately precedes it,' and, therefore, does not apply to that portion of the statute which prohibits any person from 'forcibly or secretly confin[ing] or imprison[ing] any other person within this state against his will . . . .'" *Id.* at 297-98, 519 N.W.2d at 113 (quoting *Wesley*, 421 Mich. at 383, 365 N.W.2d at 694 and MICH. COMP. LAWS § 750.349) (alternations in original) (footnotes omitted).  In other words,

> three of the six formulations of kidnapping within the Michigan statute do not require a showing of specific intent:
>    (1) forcible confinement or imprisonment of another within this state;
>    (2) secret confinement or imprisonment of another within this state; or
>    (3) forcible carrying or sending of another out of this state.

*Id.* at 298, 519 N.W.2d at 114.

2.    *Analysis*

Petitioner argues that the prosecution presented insufficient evidence to establish the elements of the charged kidnapping, specifically, that he possessed the specific intent to extort money or valuables for the release of the victims at the time of the confinement. The Michigan Court of Appeals rejected petitioner's claim, reasoning that the evidence was sufficient to prove forcible confinement kidnapping, which does not require a showing of specific intent:

> Defendant Lewis argues that he did not have the requisite "specific intent" for a jury to convict him of kidnapping. However, forcible confinement kidnapping does not require a showing of specific intent. *People v. Jaffray*, 445 Mich. 287, 298; 519 NW2d 108 (1994). Our review of the record reveals that sufficient evidence existed to establish defendant Lewis acted willfully, maliciously, without lawful authority, and with the necessary general intent. The record evidence at trial showed that upon entering Kessler's car, defendant Lewis pulled out a gun, pointed it at Norman and stole both Kessler's and Norman's cash and belongings. Defendant Lewis then forcibly directed them to drive him to Scores Lanes so he could also victimize McTurner, all the while keeping his gun on Norman. Defendant Lewis did

14

not allow Kessler and Norman to leave when they stopped on the way to the bowling alley to get gas. At Scores Lanes, defendant Lewis used Norman as a pawn to lure in McTurner and kept Kessler confined in her automobile against her will under the threat that he would kill her boyfriend, Norman, despite the fact that she no longer had anything of value. Defendant Lewis continued to threaten Norman and used him to stall and then direct McTurner to wait in Kessler's car. Once McTurner was in the car, defendant Lewis threatened him at gunpoint, transported him to a less public location behind the bowling alley, and confined him in the car against his will even after he had given up his belongings only until he was able to escape. Finally, after defendants obtained all the victims' cash, drugs, and other belongings, they did not let Kessler go and instead forced her to drive them to a getaway location. This was all done without any of the victims' consent. This evidence is sufficient for a reasonable juror to find that defendant Lewis acted willfully, maliciously, and without lawful authority. It also satisfies the general intent requirement for forcible confinement kidnapping for all three victims. *Jaffray*, *supra*, at 298; *Wesley*, *supra*, 421 Mich. 388.

*Lewis*, 2005 WL 711762, at *4, slip op. at 5-6.

The Court should conclude that this determination was reasonable, and thus that petitioner is not entitled to habeas relief. As I explained in rejecting the same claim made by petitioner's codefendant:

Pursuant to *Jackson*, viewing all of the evidence in a light most favorable to the prosecution, the evidence presented at trial sufficiently established that a rational trier of fact could find beyond a reasonable doubt that petitioner was guilty of kidnapping all three of the victims. That is, petitioner, along with his co-defendant, held all three victims against their will at one or more times during the course of events on March 17, 2003. Furthermore, petitioner's contention that there was insufficient evidence to establish specific intent to extort money or valuables for the release of the victims at the time of the confinement is without merit. As noted above, state courts define the applicable law, and Michigan has held that a conviction of kidnapping requires proof of no intent more specific than intent to confine or imprison another person against his will. *See People v. Jones*, 92 Mich. App. 100, 284 N.W.2d 501 (Mich. Ct. App.1979); *Muehlenbein v. Warren*, No 06-CV-11861 2007 WL 2773811, at * 17 (E.D. Mich. Sept.20, 2007) (Steeh, J., adopting Report of Komives, M.J.). As such, the petitioner's argument is without merit. In short, the evidence was sufficient, if believed, to establish beyond a reasonable doubt that petitioner willfully, maliciously, and without lawful authority confined the victims. Therefore, under the deferential standard of review applicable here, the Michigan Court of Appeals's conclusion was reasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

15

*Johnson v. Davis*, No. 06-15760, 2009 WL 1847379, at *8 (E.D. Mich. June 19, 2009) (Steeh, J., adopting report of Komives, M.J.).

Although not explicit, petitioner's brief also appears to suggest that the only asportation of the victims was incidental to the robbery, and thus the evidence was insufficient because only a showing of the specific intent to extort money would have obviated the need to show a non-incidental asportation of the victims.  This argument confuses "incidental" asportation with the purpose of asportation.  The purpose of petitioner and his codefendant in forcibly confining the victims may have been to facilitate a further robbery, but that confinement was not merely "incidental" to the robberies.  The confinement and asportation went for beyond, both in time and distance, what was necessary to achieve the robberies, and "add[ed] . . . a greater danger or threat thereof" than the underlying crime.  *People v. Adams*, 389 Mich. 222, 238, 205 N.W.2d 415, 423 (1973).  If petitioner's purpose was solely to commit the robberies, he could have easily accomplished this without taking [the victims] with him. The degree of movement was not merely incidental to any underlying crime but, rather, increased the danger to the [victims]."  *People v. Hodges*, 179 Mich. App. 629, 635, 446 N.W.2d 325, 327 (1989).  Here, the evidence showed that petitioner and his codefendant forced the victims into their cars, kept them confined therein, and directed their movements over a period of time.  The Michigan courts have repeatedly found similar facts to be sufficient to support the asportation element of the kidnapping statute.  *See Byrd v. Tessmer*, 82 Fed. Appx. 147, 151 (6th Cir. 2003); *People v. Green*, 228 Mich. App. 684, 696-97, 580 N.W.2d 444, 451 (1988); *People v. Murph*, 185 Mich. App. 476, 480, 463 N.W.2d 156, 158 (1990); *Hodges*, 179 Mich. App. at 635, 446 N.W.2d at 327.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

16

F.      *Sentencing (Claim II)*

Petitioner next contends that his sentences are invalid because the trial court improperly scored two offense variables and because the trial court made factual findings in imposing sentence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Guidelines Scoring*

To the extent petitioner contends that the trial court improperly scored his sentence guidelines, his claim is not cognizable on habeas review. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

2.      *Judicial Fact Finding*

Petitioner also contends that the trial court based its sentence on facts which were not proved

17

by the prosecution beyond a reasonable doubt, contrary to the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at

18

233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

*Blakely* and *Apprendi*, however, are inapplicable here. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty

which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the CSC-I charges, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on those charges. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*.  Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels.  First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power.  It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.  Indeterminate sentencing does not do so.  It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty.   Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment.  *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Jury Instructions (Claim III)*

Petitioner next argues that he was denied a fair trial by the trial court's improper jury instruction on aiding and abetting.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

21

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990).  In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

2.    *Analysis*

MICH. COMP. LAWS § 767.39  abolished the common law distinction between aiders and abettors and principals, and provides that aiders and abettors may be prosecuted and convicted as

22

though they had directly participated in the crime. *See People v. Palmer*, 392 Mich. 370, 378, 220

N.W.2d 393, 396 (1974).  Aiding and abetting under Michigan law requires proof of three elements:

(1) commission of the underlying crime either by the defendant or some other person; (2) acts or

encouragement by the defendant which aided or assisted the commission of the crime; and (3) intent

on the part of the defendant to commit the crime or knowledge by the defendant that the principal

intended to commit the crime at the time aid or encouragement was given. *See People v. Acosta*,

153 Mich. App. 504, 511-12, 396 N.W.2d 463, 467 (1986) (per curiam).  Here, the trial court

instructed the jury on these three elements, explaining that to convict petitioner as an aider and

abettor, it must find beyond a reasonable doubt:

> First, that the alleged crime was actually committed either by the defendant
> or someone else.  It does not matter whether anyone else has been convicted of the
> crime.
> Second, that before or during the crime, the defendant did something to assist
> in the commission of the crime.
> Third, the defendant must have intended the commission of the crime alleged
> or must have known that the other person intended its commission at the time of
> giving the assistance.

Trial Tr., dated 11/5/03, at 33-34.  This instruction was consistent with Michigan aiding and abetting

law as set forth above, and tracks MICHIGAN CRIMINAL JURY INSTRUCTION 2D 8.1.  Judges of this

Court have repeatedly held that these instructions adequately inform the jury of all the elements of

aiding and abetting liability, including the intent element. *See Polk v. Trombley*, No. 2:06-CV-

10568, 2007 WL 2746614, at *4 (E.D. Mich. Sept. 19, 2007) (Zatkoff, J.); *Shepherd v. Howes*, No.

05-CV-71936, 2007 WL 551601, at *7 (E.D. Mich. Feb. 20, 2007) (Cleland, J.); *Pannell v. McKee*,

No. 05-71439, 2006 WL 1662805, at *9 (E.D. Mich. June 9, 2006) (Edmunds, J., adopting report

of Komives, M.J.).

Petitioner nevertheless argues that the instruction was inadequate because it did not

23

specifically tie aiding and abetting liability to the specific intent element of each underlying crime. This argument is without merit. There is no dispute that the trial court adequately, indeed thoroughly, instructed the jury on the specific intent elements of each underlying offense. *See* Trial Tr., dated 11/5/03, at 15, 16-17, 18-19, 20, 25, 26, 27, 29-30, 31. The court then explained that petitioner was also charged with aiding and abetting the underlying crimes, and set forth the elements of aiding and abetting liability, including "that the defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance." *Id*. at 33-34. Taken as a whole, these "instructions adequately explained the intent necessary for petitioner to be guilty of armed robbery [and the other offenses] as an aider and abettor." *Coleman v. Harry*, No. 07-15172, 2009 WL 3805611, at *13 (E.D. Mich. Nov. 10, 2009) (Cohn, J., adopting report of Komives, M.J.); *see also*, *Williams v. Withrow*, 328 F. Supp. 2d 735, 753 (E.D. Mich. 2004) (Lawson, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Venue/Jurisdiction (Claim V)*

In his fifth claim, petitioner contends that he was denied due process because the trial court was without jurisdiction to try him. Specifically, he argues that his arraignment, preliminary examination, and bind over should have been conducted in the district court serving the City of Taylor, rather than that serving Romulus. And because a circuit court only acquires jurisdiction upon the filing of a return by the district court, petitioner argues that "[s]ince the district court never properly obtained jurisdiction, *a fortiorari*, the circuit court could not obtain jurisdiction of that void jurisdiction." Pet'r's Reply Br., at 19. This claim fails, for several reasons.

First, "[t]he question of whether the state courts had jurisdiction is one for those courts."

24

*Hunt v. Tucker*, 875 F. Supp. 1487, 1522 (N.D. Ala. 1995), *aff'd*, 93 F.3d 735 (11th Cir. 1996) (per curiam); *see also Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969) ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged."). "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam); *accord Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir. 1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001).

Third, even if otherwise cognizable petitioner cannot show any error in his arraignment. The Michigan venue statute provides, generally, that district court venue in a criminal case is proper in the district where the violation took place. *See* MICH. COMP. LAWS § 600.8312(2)-(3). Here, however, the crimes charged took place both in Romulus and in Taylor. The evidence at trial showed that the initial stages of the crime occurred outside the Key Manor Apartments in Romulus, and culminated at Scores Lanes in Taylor. The Michigan venue statute provides that "[i]f an offense is committed on the boundary of 2 or more counties, districts, or political subdivisions or within 1 mile thereof, venue is proper in any of the counties, districts, or political subdivisions concerned," *Id*. § 600.8312(4)(a), and that "[i]f an offense is committed in or upon any railroad train, automobile, aircraft, vessel, or other conveyance in transit, and it cannot readily be determined in which county, district, or political subdivision the offense was committed, venue is proper in any county, district, or political subdivision through or over which the conveyance passed in the course of its journey." *Id*. § 600.8312(4)(b). Because the crimes began in Romulus and continued in an automobile through Taylor, venue was proper in either district.

Finally, even if district court venue was improper, and the claim were cognizable on habeas review, petitioner would still not be entitled to relief.  Michigan law expressly provides that "[n]o order, judgment, or decree shall be void or voidable solely on the ground that there was improper venue."  *Id.* § 600.1645.  This provision is applicable in criminal proceedings.  *See People v. Houthoofd*, 487 Mich. 568, 591, 790 N.W.2d 315, 330 (2010).  For these reasons, the Court should conclude that petitioner is not entitled to habeas relief.

I.      *Ineffective Assistance of Counsel (Claims IV and VI)*

Finally, petitioner contends that he was deprived of the effective assistance of counsel in the state courts.  First, petitioner argues that his trial counsel was ineffective for failing to object to the trial court's aiding and abetting instruction.  Second, he contends that his appellate counsel was ineffective for failing to raise his jurisdictional claim on direct appeal.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id.* at 687.  These two components are mixed  questions of law and fact.  *See id.* at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course

26

should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.     *Trial Counsel (Claim IV)*

Petitioner contends that his trial counsel was ineffective for failing to object to the trial court's aiding and abetting instruction. As explained above, however, the instruction was correct under Michigan law, and adequately informed the jury of the intent necessary to convict petitioner as an aider and abettor. Thus, any objection to the instructions would have been futile, and it is well established that counsel cannot be deemed ineffective for failing to raise meritless objections. *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.     *Appellate Counsel (Claim VI)*

Petitioner also contends that his appellate counsel was ineffective for failing to raise his

27

jurisdiction claim on direct appeal. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, petitioner's jurisdiction claim is meritless as a matter of state law, and thus petitioner cannot show that counsel was ineffective for failing to raise the claim on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

28

deserve encouragement to proceed further.""" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also deny petitioner a certificate of appealability.  The resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable in light of the binding state law determination that a showing of intent to extort was not required and the overwhelming evidence

that petitioner and his codefendant forcibly confined the victims.  In light of the uniform decisions of this Court and the binding decision of the Sixth Circuit that *Blakely* does not apply to Michigan's indeterminate sentencing scheme, the resolution of petitioner's sentencing claim is not reasonably debatable.  Further, because the jury instructions tracked Michigan law on aiding and abetting and, read together, adequately instructed the jury on the necessary intent required to find guilt as an aider and abettor, the resolution of petitioner's instructional error claim is not reasonable debatable.  Likewise, it is not reasonably debatable that petitioner's jurisdictional claim is not cognizable on habeas review, and in any event state law makes clear that (a) venue was not improper and (b) even if it was, this fact does not void petitioner's conviction.  Finally, because the resolution of petitioner's underlying instructional error and jurisdiction claims is not reasonably debatable, the resolution of petitioner's related ineffective assistance claims is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

K.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of

appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                    s/Paul J. Komives
                                    PAUL J. KOMIVES
                                    UNITED STATES MAGISTRATE JUDGE

Dated: 2/14/11

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on February 14, 2011.

                    s/Eddrey Butts
                    Case Manager

31